**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

Eastern District of Kentucky
**F I L E D**

FEB - 6 2019

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**          **SUPERSEDING INDICTMENT NO. 5:19-CR-10-S-JMH-MAS**

**BENIAMIN-FILIP OLOGEANU,**
         **aka BENI,**
         **aka JOHNLA73, and**
         **aka MARIAN BRADISTEANU,**
**AUSTIN EDWARD NEDVED,**
         **aka USMC1991,**
         **aka NEDVEDTECHNOLOGIES,**
         **aka THATWHITECOLLARTHUGLYFE, and**
         **aka JIMMYGLYNN494159,**
**DIMITRIOUS ANTOINE BROWN,**
         **aka DEMETRIUS ANTWAN BROWN,**
         **aka DBROWNDAYTRADER,**
         **aka KLBGLOBAL, and**
         **aka MACTOWNTRADER,**
**RASHAWD LAMAR TULLOCH,**
         **aka USERPLAYGAME00,**
         **aka USERIO,**
         **aka UXSR, and**
         **aka UXSRFONE**
**ANDREW GILBERT YBARRA II**
         **aka POLTERGEISTER, and**
         **aka PRINCE.ADAMS**

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

**<u>INTRODUCTION</u>**

1.      At all times relevant to this Indictment, the Defendants, and others known

and unknown to the Grand Jury, were members and associates of a criminal organization,

herein referred to as the "Alexandria Online Auction Fraud Network," ("AOAF Network") whose leaders, members, and associates engaged in, among other things, acts of mail and wire fraud, money laundering, identity theft, and counterfeit trademark trafficking. These acts were committed in furtherance of a wide-scale online auction fraud scheme, that is, posting false advertisements for goods online, often using stolen identities and trademarks from legitimate online auction companies, with the intent to defraud United States-based victims out of money and laundering the money through channels in the United States and ultimately Eastern Europe. The foreign elements of the AOAF Network operated principally out of Alexandria, Romania, while the domestic elements of the AOAF Network operated in locations throughout the United States.

2.      The AOAF Network, through its leaders, members, and associates, exploited online auction sites to perpetrate their fraud, including among others eBay Inc. ("eBay"), a company that facilitates consumer-to-consumer and business-to-consumer sales online; Craigslist, a company that enables individuals to post a variety of online, classified advertisements, for items such as jobs, houses, retail goods, and services; Amazon.com, Inc. ("Amazon"), an electronic commerce and cloud computing company that enables consumers to sell items online; and Autotrader.com, Inc. ("Autotrader"), an online marketplace for automobile sales and purchases, that enables consumers to sell their vehicles directly to consumers. Consumers can use each of these websites as online auction sites to sell their goods.

3.      The leaders, members, and associates of the AOAF Network also worked

2

together to launder the proceeds of the online auction fraud, by converting victim payments into bitcoin in the United States, transferring the bitcoin to Eastern Europe where many members of the AOAF Network live and work, and then converting the bitcoin back to fiat currency.

4.      Payments made by victims to the AOAF Network were often in the form of reloadable prepaid cards, prepaid debit cards, and gift cards of varying types (collectively referred to herein as "prepaid debit cards"), including Green Dot Moneypaks, Visa One Vanilla prepaid debit cards, PayPal My Cash cards, and Amazon gift cards; United States postal money orders; cashier's checks; MoneyGram and Western Union wires; and bank wires and deposits.

5.      Bitcoin was a digital currency that operates as a peer-to-peer payment system.  Users send and receive bitcoins using wallet software on a personal computer, mobile device, or web application.  Bitcoin is exchanged between bitcoin addresses, and every bitcoin transaction generates a transaction hash that is forever stored on a public ledger commonly called the bitcoin blockchain.

6.      The Confidential Source ("CS") was an American citizen, who, beginning in late 2014, began laundering funds on behalf of several individuals conducting online auction fraud.  In June of 2015, the CS was confronted about his illegal activity by the U.S. government and began cooperating with law enforcement at that time.  He conducted all activities in furtherance of the crimes described herein in the Eastern District of Kentucky.

## COUNT 1
### 18 U.S.C. § 1962(d)

7.     Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

### The Enterprise

8.     Beginning on at least December 31, 2013, and continuing until at least the date of this Indictment, in the Eastern District of Kentucky and elsewhere,

**BENIAMIN-FILIP OLOGEANU,**
**AUSTIN EDWARD NEDVED,**
**DIMITRIOUS ANTOINE BROWN,**
**RASHAWD LAMAR TULLOCH,**

and others known and unknown to the Grand Jury, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961 (hereafter the "AOAF Network" or the "Enterprise"), that is, a group of individuals associated in fact. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the Enterprise. This Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### The Racketeering Violation

9.     Beginning on at least December 31, 2013, and continuing until at least the date of this Indictment, in the Eastern District of Kentucky and elsewhere,

**BENIAMIN-FILIP OLOGEANU,**
**AUSTIN EDWARD NEDVED,**
**DIMITRIOUS ANTOINE BROWN, and**
**RASHAWD LAMAR TULLOCH,**

4

being persons employed by and associated with the Enterprise, which Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully, and intentionally combine, conspire, confederate, and agree together and with each other and with other persons known and unknown to the Grand Jury to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Section 1961(1) and (5), involving multiple acts indictable under

  a. 18 U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud),

  b. 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), 1956(a)(2)(A), and 1956(h) (relating to the laundering of monetary instruments),

  c. 18 U.S.C. § 1028 (relating to fraud and related activity in connection with identification documents, authentication features, and information), and

  d. 18 U.S.C. § 2320(a)(1) (relating to trafficking in goods or services bearing counterfeit marks).

**Purposes of the Enterprise**

10. The purposes of the Enterprise included the following:

  a. Enriching members and associates of the Enterprise through, among other things, mail and wire fraud, money laundering, identity theft, and trafficking in counterfeit trademarks.

5

     b. Developing more efficient and effective means of conducting its members' and associates' activities.

     c. Protecting the Enterprise and its members from detection, apprehension, and prosecution by law enforcement.

### Roles of the Defendants

11.    BENIAMIN-FILIP OLOGEANU is a Romanian national from Alexandria, Romania. During all times relevant to the Indictment, OLOGEANU was a mid- to high-level manager in the AOAF Network.

12.    AUSTIN EDWARD NEDVED is an American, living in or around Massachusetts. During all times relevant to the Indictment, NEDVED was a third-party money launderer, who managed an operation designed to receive, redeem, and convert into bitcoin or cash victim payments, obtained as a result of the actions of the AOAF Network.

13.    DIMITRIOUS ANTOINE BROWN is an American, living in or around Georgia and Florida. During all times relevant to the Indictment, BROWN was a third-party money launderer, who managed an operation designed to receive, redeem, and convert into bitcoin or cash victim payments, obtained as a result of the actions of the AOAF Network.

14.    RASHAWD LAMAR TULLOCH is an American, living in or around Georgia. During all times relevant to this Indictment, TULLOCH was a third-party money launderer, who managed an operation designed to receive, redeem, and convert into bitcoin or cash victim payments, obtained as a result of the actions of the AOAF Network.

6

## Means and Methods of the Enterprise

15.    Among the means and methods by which the Defendants and their associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

a. Members of the Enterprise and their associates posted false and fictitious advertisements to online auction and sales websites designed to facilitate consumer-to-consumer sales in the United States in order to defraud consumers in the United States of money that they paid for the nonexistent items advertised.

b. Members of the Enterprise and their associates obtained or created accounts to post fake advertisements, email accounts to communicate with victims, and bank accounts to receive victim payments by criminally possessing, transferring, and using personal identifying information of United States-based victims.

c. Members of the Enterprise and their associates used wire communications to deliver to victims, most often based in the United States, invoices and emails containing the trademarks of legitimate operations in order to entice those individuals to send money for payment of the nonexistent, fraudulently advertised goods.

d. Members of the Enterprise and their associates either collected victim payments and sent information necessary to redeem those payments to third-

party money launderers located in the United States, or directed that victims send payment directly to bank accounts, U.S. Post Office boxes, addresses, or MoneyGram and Western Union locations of the third-party money launderers located in the United States. These third-party money launderers established bank accounts and Post Office boxes and offered physical addresses to receive victim payments directly.

e. After receiving victim payments, the money launderers converted payments into bitcoin and sent the bitcoin back to Romanian-based members of the Enterprise and their associates.

f. These bitcoin recipients then employed the services of bitcoin exchangers located in Europe, who were aware that the bitcoin was obtained through fraudulent means, to convert the bitcoin to fiat currency.

16. It was further a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

**Overt Acts**

17. In furtherance of the conspiracy and to achieve the objectives thereof, the Defendants and their co-conspirators performed or caused to be performed the following overt acts, among others, in the Eastern District of Kentucky and elsewhere:

a. On or about March 7, 2016, BENIAMIN-FILIP OLOGEANU e-mailed lindagray616@reagan.com a false eBay invoice, with a counterfeit trademark for eBay, purporting to show that A.H. of North Dakota was

8

selling W.G. of Missouri a 2003 Toyota Tacoma Crew SR5 for $2,500.

b. On or about August 27, 2016, OLOGEANU requested that the CS review and modify the language he used in his invoices instructing victims to send money orders as payment.

c. On or about November 9, 2015, AUSTIN EDWARD NEDVED provided the CS with address information for a Post Office box in Massachusetts, to receive money orders. On August 18, 2016, NEDVED provided the CS with address information for E.Z., to receive cashier's checks. On October 27, 2016, NEDVED provided the CS with address information for a Post Office box in the name of T.M. in Massachusetts, to receive checks.

d. DIMITRIOUS ANTOINE BROWN obtained information for bank accounts in the name of J.C. at Suntrust Bank, BB&T, and Robin's Financial Credit Union, and conveyed the bank account information to the CS. On or about June 29, 2016, a co-conspirator directed a victim to send $2,950 in wire deposits to the J.C. BB&T account. BROWN paid the CS for this wire on or around July 1, 2016.

e. BROWN obtained information for bank accounts in the name of H.M. at Suntrust Bank, Bank of America, Robin's Financial Credit Union, Wells Fargo, Regions Bank, Chase Bank, and Woodforest Bank, and conveyed that information to the CS. On or about July 18, 2016, a co-conspirator directed a victim to wire $3,500 into the H.M. Chase account. Brown withdrew the

funds from this account on or about July 27, 2016.

f. On or about September 22, 2015, in an online chat with the CS, RASHAWD LAMAR TULLOCH requested that the CS send him Visa OneVanilla card codes, explaining that he has a device capable of encoding the magnetic stripe on credit and debit cards and people who can run the debit card to extract funds therefrom. On or about September 25, 2015, September 28, 2015, and October 1, 2015, TULLOCH again requested that the CS send him Visa OneVanilla codes.

g. On or about December 17, 2015 through December 19, 2015, TULLOCH communicated with OLOGEANU over an online chat service about rates for processing various methods of payment. OLOGEANU also provided TULLOCH with debit or gift card codes to redeem.

h. On or about March 25, 2016, TULLOCH sent the CS a message over online chat requesting a referral for services that allowed TULLOCH to log into PayPal without exposing his true Internet Protocol address.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2
### 18 U.S.C. § 1349

18. Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

19. BENIAMIN-FILIP OLOGEANU, a.k.a. BENI, a.k.a. JOHNLA73, a.k.a. MARIAN BRADISTEANU, began working with the CS in at least December 2013, when

the two communicated via a messaging platform on Localbitcoins.com and a jabber instant messaging client.

20.     From at least December 13, 2013, through September of 2017, in Boyd, Scott, and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

## BENIAMIN-FILIP OLOGEANU,

and others known and unknown to the grand jury, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

21.     It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items advertised on the internet that did not exist.

### Manner and Means

22.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

23.     OLOGEANU and others used the internet to post advertisements for goods to online auction websites, including Craigslist and eBay.

24.    OLOGEANU and his co-conspirators persuaded victims that the advertisements were legitimate through various means, including impersonating an American and by pretending to be customer support. For example, OLOGEANU and his co-conspirators communicated with victims using the email account dineewilliam@gmail.com.

25.    OLOGEANU also deceived victims by sending seemingly legitimate invoices for their purchases. On at least one occasion, on or about August 26 and 27, 2016, OLOGEANU discussed the design and content of invoices he sent or intended to send to victims with the CS through online communication. He requested that the CS send him invoices, that the CS review his invoices, and that the CS help him modify the steps for payment that were outlined on the invoices. OLOGEANU repeated his request to the CS for invoices on several occasions.

26.    OLOGEANU shared his invoices with others members of the AOAF Network, including one who used the online moniker, "garethbale."

27.    OLOGEANU requested payment for the items he advertised in various methods, depending on which payment method was the easiest to convert into cryptocurrency at the time, including bank wire, money orders, and prepaid debit or gift cards. Through online communications, OLOGEANU consulted the CS about the best methods of payment in the United States at the time.

28.    In this way, OLOGEANU convinced numerous victims to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 3
### 18 U.S.C. § 1956(h)

29.     Paragraphs 1 through 6 and 18 through 28 above are re-alleged and incorporated herein by reference.

30.     From at least December 13, 2014, through September of 2017, in Boyd, Scott, and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

### BENIAMIN-FILIP OLOGEANU,

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code,

13

Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

31.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

14

32.     After enticing a victim to send money to OLOGEANU in the manner described above, OLOGEANU would often collect payment information and provide that to the CS. OLOGEANU and the CS shared a Google Sheets spreadsheet with each other, on which the two maintained a ledger of their activity. Through wire communications, OLOGEANU provided the CS at least one Gmail address for purposes of accessing the Google Sheets spreadsheet. On this spreadsheet, OLOGEANU and the CS recorded information about payments victims had made to OLOGEANU and his co-conspirators.

33.     OLOGEANU also communicated the necessary information about victim payments to the CS via wire communication. OLOGEANU knew that the CS used other co-conspirators, based in the United States, to process the money sent by the victims. The co-conspirators processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards, or collecting the wire transfers, money orders, and cashier's checks, and converting that money to bitcoin to transfer to OLOGEANU.

34.     AUSTIN EDWARD NEDVED, DIMITRIOUS ANTOINE BROWN, RASHAWD LAMAR TULLOCH, and ANDREW GILBERT YBARRA II, and others, processed payments for OLOGEANU.

35.     OLOGEANU posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent. He also provided bitcoin addresses in the course of online chat communications with a co-conspirator. The co-conspriator then sent bitcoin he had converted for OLOGEANU from the Eastern District of Kentucky to bitcoin addresses

OLOGEANU provided.

36.     OLOGEANU then transferred his bitcoin to another co-conspirator located outside the United States. That co-conspirator exchanged the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 4
### 18 U.S.C. § 1956(h)

37.     Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

38.     From at least February 17, 2015, through November 2017, in Boyd, Scott, and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

**AUSTIN EDWARD NEDVED**

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully

activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

39.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

40.     The CS, in the Eastern District of Kentucky, received prepaid debit/gift card codes from a foreign fraudster, typically located in Europe, and conveyed that information to NEDVED. NEDVED or his co-conspirators encoded the prepaid debit/gift card codes onto dummy cards. Then, NEDVED or his co-conspirators used the dummy cards to purchase money orders or other forms of payment. Finally, NEDVED would convert the money orders or other forms of payment into cash or bitcoin, and send those funds to the CS, minus a previously agreed upon percentage of value, which NEDVED retained as his payment.

41.     NEDVED also provided the CS with bank account information or Post Office box details. The CS would then convey this information to the foreign fraudster, who would direct the victims to send payment to the bank accounts or Post Office boxes provided. NEDVED and his co-conspirators then collected the victim payment and converted it or sent it directly to the CS in the form of cash or bitcoin, minus a previously agreed upon percentage of value, which NEDVED retained as his payment.

42.     Ultimately, the CS, located in the Eastern District of Kentucky, transferred the remaining proceeds of the fraud to the foreign fraudsters, typically located in Europe.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 5
### 18 U.S.C. § 1028A

43.    From on or about September 15, 2016, through at least on or about October

11, 2016, in Scott and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

### AUSTIN EDWARD NEDVED

did knowingly transfer, possess, and use, without lawful authority, a means of

identification of another person, T.M., during and in relation to a felony violation

enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud and bank fraud, knowing that the

means of identification belonged to another actual person, in violation of Title 18, United

States Code, Section 1028A(a)(1).

## COUNT 6
### 18 U.S.C. § 1956(h)

44.    Paragraphs 1 through 6 above are re-alleged and incorporated herein by

reference.

45.    From at least March 2015, through March 2017, in Boyd, Scott, and Fayette

Counties, in the Eastern District of Kentucky and elsewhere,

### DIMITRIOUS ANTOINE BROWN

and others known and unknown, knowingly combined, conspired, confederated, and

agreed together and with each other to commit offenses against the United States in

violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting

interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport,

transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

46.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

47.     The CS, in the Eastern District of Kentucky, received prepaid debit/gift card codes from a foreign fraudster, typically located in Europe, and conveyed that information to BROWN.  BROWN or his co-conspirators encoded the prepaid debit/gift card codes onto dummy cards.  Then, BROWN or his co-conspirators used the dummy cards to purchase money orders or other forms of payment.  Finally, BROWN would convert the money orders or other forms of payment into cash or bitcoin, and send those funds to the CS, minus a previously agreed upon percentage of value, which BROWN retained as his payment.

48.     BROWN also provided the CS with bank account information or Post Office box details.  The CS would then convey this information to the foreign fraudster, who would direct the victims to send payment to the bank accounts or Post Office boxes provided.

BROWN and his co-conspirators then collected the victim payment and converted it or sent it directly to the CS in the form of cash or bitcoin, minus a previously agreed upon percentage of value, which BROWN retained as his payment.

49.     Ultimately, the CS, located in the Eastern District of Kentucky, transferred the remaining proceeds of the fraud to the foreign fraudsters, typically located in Europe.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 7
**18 U.S.C. § 1028(a)(2)**

50.     On or about August 14, 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### DIMITRIOUS ANTOINE BROWN

did knowingly transfer authentication features or false identification documents, to wit: four false Florida Driver's Licenses with holograms, knowing that such authentication features or documents were produced without lawful authority, and the authentication features or false identification documents were transported in the mail in the course of the unauthorized transfer, in violation of Title 18, United States Code, Section 1028(a)(2).

### COUNT 8
**18 U.S.C. § 1028(a)(2)**

51.     On or about August 17, 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### DIMITRIOUS ANTOINE BROWN

did knowingly transfer authentication features or false identification documents, to wit: four false Florida Driver's Licenses with holograms, knowing that such authentication features or documents were produced without lawful authority, and the authentication features or false identification documents were transported in the mail in the course of the unauthorized transfer, in violation of Title 18, United States Code, Section 1028(a)(2).

## COUNT 9
### 18 U.S.C. § 1956(h)

52.    Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

53.    From at least February 2015, through September 2017, in Boyd, Scott, and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

### RASHAWD LAMAR TULLOCH

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation

of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in

violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

54.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

55.     The CS, in the Eastern District of Kentucky, received prepaid debit/gift card codes from a foreign fraudster, typically located in Europe, and conveyed that information to TULLOCH. TULLOCH or his co-conspirators encoded the prepaid debit/gift card codes onto dummy cards.  Then, TULLOCH or his co-conspirators used the dummy cards to purchase money orders or other forms of payment.  Finally, TULLOCH would convert the money orders or other forms of payment into cash or bitcoin, and send those funds to the CS, minus a previously agreed upon percentage of value, which TULLOCH retained as his payment.

56.     TULLOCH also provided the CS with bank account information or Post Office box details.  The CS would then convey this information to the foreign fraudster, who would direct the victims to send payment to the bank accounts or Post Office boxes provided.  TULLOCH and his co-conspirators then collected the victim payment and converted it or sent it directly to the CS in the form of cash or bitcoin, minus a previously agreed upon percentage of value, which TULLOCH retained as his payment.

57.     Ultimately, the CS, located in the Eastern District of Kentucky, transferred the remaining proceeds of the fraud to the foreign fraudsters, typically located in Europe.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 10
### 18 U.S.C. § 1956(h)

58.     Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

59.     From at least March 2016, through February 2017, in Boyd, Scott, and Fayette Counties, in the Eastern District of Kentucky and elsewhere,

### ANDREW GILBERT YBARRA II

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole

and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

60.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

61.     The CS, in the Eastern District of Kentucky, received prepaid debit/gift card

27

codes from a foreign fraudster, typically located in Europe, and conveyed that information to YBARRA. YBARRA or his co-conspirators encoded the prepaid debit/gift card codes onto dummy cards. Then, YBARRA or his co-conspirators used the dummy cards to purchase money orders or other forms of payment. Finally, YBARRA would convert the money orders or other forms of payment into cash or bitcoin, and send those funds to the CS, minus a previously agreed upon percentage of value, which YBARRA retained as his payment.

62.     YBARRA also provided the CS with bank account information or Post Office box details. The CS would then convey this information to the foreign fraudster, who would direct the victims to send payment to the bank accounts or Post Office boxes provided. YBARRA and his co-conspirators then collected the victim payment and converted it or sent it directly to the CS in the form of cash or bitcoin, minus a previously agreed upon percentage of value, which YBARRA retained as his payment.

63.     Ultimately, the CS, located in the Eastern District of Kentucky, transferred the remaining proceeds of the fraud to the foreign fraudsters, typically located in Europe.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 11
## 18 U.S.C. § 1028A

64.     On or about February 21, 2017, in Scott and Fayette County, in the Eastern District of Kentucky and elsewhere,

## ANDREW GILBERT YBARRA II

28

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, M.J., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 1963
### 18 U.S.C. § 981(a)(1)(C)
### 18 U.S.C. § 982(a)(1)
### 28 U.S.C. § 2461

1.      The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.

2.      Upon conviction of the offense charged in Count One of this Indictment,

**BENIAMIN-FILIP OLOGEANU,**
**AUSTIN EDWARD NEDVED,**
**DIMITRIOUS ANTOINE BROWN, and**
**RASHAWD LAMAR TULLOCH**

shall forfeit to the United States of America,

a.  Any interest acquired or maintained in violation of section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.  Any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the

29

conduct of, in violation of section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

c.  Any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.  The allegations contained in Counts Two through Four, Six, Nine, and Ten of this Indictment are hereby re-alleged and incorporated by herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461.

4.  Upon conviction of the offenses charged in Counts Two through Four, Six, Nine, and Ten of this Indictment,

**BENIAMIN-FILIP OLOGEANU,**
**AUSTIN EDWARD NEDVED,**
**DIMITRIOUS ANTOINE BROWN,**
**RASHAWD LAMAR TULLOCH, and**
**ANDREW GILBERT YBARRA II**

shall forfeit to the United States of America, any property, real or personal, which is involved in violations of Title 18, United States Code, Section 1956, and/or constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1349 or 1956, which property is subject to forfeiture to the United States pursuant to Title

18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461.

The following specific property is subject to forfeiture pursuant to paragraphs 2 and 3 above:

BITCOIN ACCOUNTS:

1)      Lobalbitcoins.com account in the name of USMC1991, belonging to Austin E. Nedved

2)      Localbitcoins.com account in the name of UserPlaygame00, belonging to Rashawd Tulloch

3)      Localbitcoins.com account in the name of dbrowndaytrader, belonging to Dimitrious Brown

VEHICLE:

2013 Porsche Panamera GTS970, license plate number B125MKR, VIN WPOZZZ97ZDL070949, in the name of BENIAMIN-FILIP OLOGEANU;

REAL PROPERTY:

1)      Real property at 18 Frigului Street, Building 1, Apartment 719 and Spot 1-83, Bucharest, Romania, in the name of Alexandrina and Daniel Ologeanu, consisting of an apartment and parking spot; and

2)      Real property located in Scorniceti Village, Olt County, Romania, in the name of Beniamin-Filip Ologeanu, consisting of land and a small residence, purchased under notarial contract number 949 on March 20, 2017 (69,500 square meters), and notarial contract number 13822 on December 20, 2017.

6.      If any property subject to forfeiture pursuant to Title 18, United States Code, Sections 1963(a)(1)-(3), 981(a)(1)(C), and 982(a)(1) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants:

a.  Cannot be located upon the exercise of due diligence;

b.  Has been transferred or sold to, or deposited with, a third party;

c.  Has been placed beyond the jurisdiction of the court;

d.  Has been substantially diminished in value; or

e.  Has been comingled with other property which cannot be divided without difficulty,

the United States of America, shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, 1963(m).

All pursuant to Title 18, United States Code, Sections 1963(a)(1)-(3), 981(a)(1)(C), and 982(a)(1), and Title 28, United States Code, Section 2461(c), which incorporates Title 21, United States Code, Section 853(p).

**A TRUE BILL**

FOREPERSON

**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:** Not more than 20 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNT 2:** Not more than 20 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 3, 4, 6, 9, and 10:**

Not more than 20 years imprisonment, $500,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 7 & 8:**

Not more than 15 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 5 & 11:**

If convicted of one count, mandatory term of imprisonment of two years, to be served consecutive to any other sentence imposed for Counts 1 through 3.

If convicted of two or more counts: 2 years imprisonment, which may run concurrently, in whole or in part, with any other term of imprisonment imposed for Aggravated Identity Theft convictions, but consecutively to any term of imprisonment imposed on Counts 1 through 3.

Plus, not more than $250,000 fine and 1 year supervised release on each count of conviction on Counts 4 through 5.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.

**PLUS:** Forfeiture as listed.